UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| LACHAUNDA WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. _____ |
| | ) |
| FANEUIL, INC., | ) |
| A Foreign Profit Corporation, | ) |
| | ) |
| Defendant. | ) |
| _____ | / |

**DEFENDANT'S NOTICE OF REMOVAL**

Defendant FANEUIL, INC. ("Faneuil"), by and through its undersigned attorneys and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, respectfully files this Notice of Removal giving notice of the removal of this action from the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, to the United States District Court for the Middle District of Florida, Orlando Division. In support of this Notice of Removal, Defendant states as follows:

**I.    PROCEDURAL HISTORY**

1.    On or about November 24, 2020, Plaintiff LACHAUNDA WOODS ("Plaintiff") filed a civil action against Defendant in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, entitled *Lachaunda Woods v. Faneuil, Inc.*, Case No. 2020-CA-11703-O ("State Court Action").

2.    Plaintiff's Complaint contains the following causes of action against Defendant:  (1) alleged unlawful retaliation in violation of Florida's Private Whistleblower's

Act, Section 448.102(3), Florida Statutes; and (2) alleged unlawful retaliation in violation of the Florida Civil Rights Act.

3.     On November 25, 2020, Faneuil was served with a Summons and Complaint through its registered agent.  A copy of the Summons and Complaint reflecting service, as well as true and legible copies of all other papers on file in the State Court Action are attached hereto as **Exhibit "A."**   Thus, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), within thirty-days (30) from the date on which the Summons and Complaint were served.  The judge presiding over the state court action has not entered any orders, and there are no pending motions.

4.     The District and Division embracing the place where the state court action is pending is the United States District Court for the Middle District of Florida, Orlando Division.   *See* 28 U.S.C. §§ 89(b), 1441(a).

5.     This case is a civil action that may be removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, because it is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## II.    DIVERSITY OF CITIZENSHIP

6.     To qualify for diversity jurisdiction, there must be complete diversity between the parties, which means no plaintiff may be a citizen of the same state as the defendant. *See Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1356 (S.D. Fla. 1998) (citations omitted).

7.     To determine citizenship in a state for the purposes of diversity jurisdiction, a court may consider evidence of (1) voting registration and practices; (2) location of real and

personal property; (3) location of brokerage and bank accounts; (4) memberships in unions, clubs, organizations, etc.; (5) place of employment or business; (6) drivers' license and automobile registration; and (7) payment of taxes. *See Mock v. UnitedHealthcare Ins. Co.*, 2017 WL 7731956 at *1 (M.D. Fla. Feb. 1, 2017); *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (finding plaintiff was a citizen of Florida for diversity jurisdiction when plaintiff owned property in Florida, was an owner of a business in Florida, paid income taxes in Florida, had a driver's license in Florida, and was registered to vote in Florida).

8.      In the Complaint, Plaintiff indicates that she resides in Florida. Compl. ¶ 2. Plaintiff also worked for Defendant in Orange County, Florida, and her address on file when she was employed with Defendant was in Kissimmee, Florida. *See* Declaration of Cindy Sanborn attached as **Exhibit C**, ¶5. In addition, based on information obtained in a background search, the following facts establish Plaintiff is domiciled in Florida and is therefore a citizen of Florida for the purposes of diversity jurisdiction: Plaintiff's drivers' license is issued in Florida; she is registered to vote in Florida, and her vehicle is registered in Florida. Plaintiff is also a licensed insurance agent in the State of Florida. *See* excerpts from background check attached as **Exhibit D**. Thus, Plaintiff is a citizen of the State of Florida for purposes of 28 U.S.C. § 1332.

9.      Pursuant to 28 U.S.C. § 1332(c)(1), a corporation is a citizen of every state and foreign state by which it has been incorporated and also of the state where it has its principal place of business.  Faneuil is a foreign corporation incorporated in the State of Delaware.

10.    To determine a corporation's "principal place of business," the Supreme Court has held courts should apply the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).   Under that test, a corporation's principal place of business is the state in which the corporation's officers direct, control, and coordinate the corporation's activities. *Id*. A corporation's principal place of business normally is the state in which it maintains its main headquarters. *Id*.

11.    Faneuil's officers direct, control, and coordinate the corporation's activities at its corporate headquarters in Virginia. Thus, Faneuil has its principal place of business in Virginia.

12.    Based on Faneuil's state of incorporation and the location of its principal place of business, Faneuil is a citizen of Delaware and Virginia for purposes of diversity jurisdiction.

13.    Therefore, complete diversity exists in this case because Plaintiff is a citizen of Florida and Defendant is a citizen of Delaware and Virginia. Accordingly, for the purposes of 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists at the time of filing this Notice of Removal.

### III.    AMOUNT IN CONTROVERSY

14.    Pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction also requires the amount in controversy to "exceed the sum or value of $75,000, exclusive of interest and costs."

15.    Where, as here, the initial pleading does not demand a specific sum, the notice of removal may assert the amount in controversy. 28 U.S.C. § 1446(c)(2)(A). The Supreme

Court has held a removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not submit evidence in support thereof. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

16.     In assessing the amount in controversy, the Court considers the value of the plaintiff's claims by estimating the amounts that "will be put at issue during the litigation," regardless of the plaintiff's likelihood of success. *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (explaining that "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover"). In conducting its analysis, the Court may rely upon its "judicial experience and common sense," rather than a plaintiff's self-serving representations that the value of her claims is indeterminate. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010).

17.     "Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (internal quotation marks omitted). Thus, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements. *Id.* at 1062.

18.     Courts may also consider jury verdicts rendered in matters raising similar claims and injuries. *See, e.g.*, *Payne v. J.B. Hunt Transp., Inc.*, 154 F. Supp. 3d 1310, 1314

(M.D. Fla. 2016) (reviewing evidence of settlements and jury verdicts together with the allegations of plaintiff's complaint to conclude "it [was] more likely than not that the amount in controversy exceeds $75,000."); *Gardner v. Mgmt. & Training Corp.*, 2014 WL 3039335, at *2 (N.D. Fla. July 3, 2014) (considering proffered jury verdict research in determining whether the amount in controversy exceeds $75,000); *Alshakanbeh v. Food Lion, LLC*, 2007 U.S. Dist. LEXIS 20746, at *4-7 (M.D. Fla. Mar. 23, 2007) (considering information from defendant based upon defendant's review of published jury verdicts and damages awards involving claims similar to plaintiff's in determining the requisite $75,000 minimum had been established); *Schmidt v. Pantry, Inc.*, 2012 WL 1313490, at *3-4 (N.D. Fla. Mar. 6, 2012) (considering jury verdicts from other Florida courts when determining emotional distress damages in an employment discrimination case exceeded the amount in controversy requirement). Importantly, "[a] removing defendant is *not* required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Payne*, 154 F. Supp. 3d at 1313 (internal quotation marks omitted; emphasis added) (citing *Pretka*, 608 F.3d at 754).

19.    A plain reading of Plaintiff's Complaint – together with the jurisdictional allegations herein – demonstrates the amount in controversy exceeds the sum of $75,000.00, and thus meets the jurisdictional amount required for removal based on diversity. *See* 28 U.S.C. § 1332(a). In summary, Plaintiff alleges Faneuil retaliated against her in violation of Florida's Whistleblower Act and the Florida Civil Rights Act after she complained of alleged wrongdoing by Faneuil. Based on those alleged facts, Plaintiff is seeking "front pay, back pay, and emotional distress damages, as well as her costs and attorneys' fees, declaratory and

injunctive relief and such other relief deemed proper by [the] Court." Compl., WHEREFORE clauses following ¶¶ 49 and 60.

20.    As to lost wages, back pay should be calculated from the time of the adverse employment action through the date of trial. *See, e.g.*, *Pope v. 20/20 Commc'ns, Inc.*, No. 8:15-cv-1774-30JSS, 2015 WL 5165223, at *2 (M.D. Fla. Sept. 2, 2015) (back-pay damages calculated through proposed date of trial); *Hendry v. Tampa Ship, LLC*, No. 8:10-cv-1849-T-30-30TGW, 2011 WL 398042, *2 (M.D. Fla. Feb. 4, 2011) ("Back pay is generally calculated from the date of the adverse employment action to the date of judgment."); *Morgan v. Sears, Roebuck & Co.*, No. 12-60055-CIV, 2012 WL 2523692, at *2 (S.D. Fla. June 29, 2012) (calculating back pack from time of termination through expected trial date, noting the court may use its "judicial experience and common sense" in making that determination); *Penalver v. N. Elec., Inc.*, No. 12-80188-CIV, 2012 WL 1317621, at *2 (S.D. Fla. Apr. 17, 2012) (calculating back pay through the "first possible trial date" approximately ten months after removal); *Messina v. Chanel, Inc.*, No. 10-24518-CIV, 2011 WL 2610521, at *2 (S.D. Fla. July 1, 2011) (including back pay through estimated time of trial eighteen months in the future). Indeed, the Eleventh Circuit has approved calculating back pay through the estimated time of trial for purposes of the amount in controversy. *See Wineberger v. Racetrac Petroleum, Inc.*, No. 5:14-cv-653-Oc-30PRL, 2015 WL 225760, at *3 (M.D. Fla. Jan. 16, 2015) (calculating back pay from termination through estimated trial date of twenty-four months after complaint was filed, along with front pay of one year), *aff'd by Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. Appx. 914, 917 (11th Cir. 2016) (approving same).

21.     At the time of her separation on September 30, 2019, (Compl., ¶ 35), Plaintiff was earning approximately $15 per hour, equivalent to approximately $600 per week. **Exhibit C** at ¶ 6. As of the date of this removal, it has been 15 months since Plaintiff's employment ended. Accordingly, Plaintiff's back pay to date is approximately $39,000. Adding an additional year of back pay to account for the expected time between now and trial, Plaintiff could recover approximately **$70,800.00** in total back pay.

22.     Front pay further augments the amount of lost wages in this action. *Brown v. Cunningham Lindsey U.S., Inc.*, 2005 WL 1126670, at *4-5 (M.D. Fla. May 11, 2005) (crediting back pay from the time of plaintiff's termination through the estimated time of trial, and crediting one year of front pay as a conservative measure of potential future lost wages). *Wineberger*, 672 F. App'x at 917 (approving inclusion of one year of front pay in amount in controversy calculation under FCRA); *see also Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1349 (11th Cir. 2000) (affirming district court's award including one year's worth of front pay in discrimination case).  Here, one year of front pay would add another **$31,200.00** to the amount in controversy, bringing the amount in controversy to **$102,000.00**.

23.     Additionally, district courts routinely include compensatory damages in the form of pain and suffering in the jurisdictional amount.  *See Estevez-Gonzalez v. Kraft, Inc.*, 606 F. Supp. 127, 129 (S.D. Fla. 1985) (including unspecified amount of compensatory damages for "physical and mental pain, physical handicap, impairment of working ability, injuries permanent or continuing in nature, and medical expenses"); *Bartley v. Starwood Hotel & Resorts Worldwide, Inc.*, No. 07-80637-CIV, 2007 WL 2774250, at *1 (S.D. Fla. Sept. 24, 2007) (finding the complaint "clearly established" amount in controversy based, in

part, on general allegations of pain, mental anguish, scarring, disfigurement, loss of enjoyment of life, medical expenses, etc.); For instance, Judge Moody of the Middle District included compensatory damages in the range of $5,000-$30,000 under FCRA for purposes of calculating the amount in controversy, when the complaint merely alleged emotional distress in the nature of "that which would have been experienced by most individuals suddenly terminated from their jobs for unsavory reasons." *Wineberger*, 2015 WL 225760 at *4, *aff'd by Wineberger*, 672 F. Appx. at 917.    Indeed, the Eleventh Circuit has held that objective medical testimony is not necessary to support an award of emotional distress damages under the Florida Civil Rights Act, and a plaintiff's lay testimony concerning the emotional impact of illegal termination may be sufficient to support such award. *See Munoz*, 223 F.3d at 1348-49 (11th Cir. 2000) (affirming jury award of $150,000 for emotional distress caused by illegal termination under Florida Civil Rights Act); *see also Bernstein v. Sephora, Div. of DFS Grp. L.P.*, 182 F. Supp. 2d 1214, 1228 (S.D. Fla. 2002) (finding compensatory damages of $75,000.00 was maximum recoverable in discrimination case when evidence consisted mainly of plaintiff's "own rather conclusory testimony about her general distress").

24.    Here, Plaintiff purports to seek emotional distress damages.  Even if she were to proffer nothing beyond her own testimony as to how the alleged actions of Defendant have impacted her mental well-being, Plaintiff could very well end with an award of $75,000.00, as was the case in *Bernstein*, *supra*.  In fact, the award could be as high as the award in *Munoz*, *supra*, where, even though there was no objective medical testimony as to the plaintiff's damages, an award of $150,000.00 was affirmed by the Eleventh Circuit. Plaintiff's general allegation that she has suffered emotional pain and suffering, as stated in

Counts I and II of the Complaint are analogous to those in *Bartley*, *supra*, where a sister district court found that general allegations of pain and suffering and mental anguish, among other allegations, can "clearly establish[]" the amount in controversy. In light of the applicable jurisprudence, a **$15,000.00** award for emotional pain and suffering is a very conservative estimate to include in the amount in controversy calculation.

25.    Plaintiff also seeks punitive damages. (Compl. WHEREFORE clause). Punitive damages must also be included in the amount in controversy, as they are recoverable under the FCRA. *See Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered."). The maximum punitive damage award allowable under the FCRA for Plaintiff is $100,000.00. § 760.11(5), Fla. Stat. Thus, Plaintiff's request for punitive damages under the FCRA, alone, satisfies the "amount in controversy" requirement. *Id.*; *Cowan v. Genesco, Inc.*, Case No. 3:14-cv-261-J-34JRK, 2014 WL 3417656, at *4 n.7 (M.D. Fla. July 14, 2014) ("[*McDaniel*, 568 Fed. Appx. 729, 731] can be read as supporting the conclusion that a plaintiff's mere request for punitive damages under the FCRA, given the $100,000 statutory limit, would satisfy the amount in controversy.").

26.    Given the facts alleged here, including the statements Plaintiff alleges Defendant's agents made, **$15,000.00** in punitive damages is a very conservative estimate of what she could likely record.

27.    Adding Plaintiff's claim for attorneys' fees, which would be recoverable based on the claims brought, there is no question the amount in controversy significantly

exceeds $75,000.00. *See Penalver*, 2012 WL 1317621 at *3 (including reasonable attorney's fees in amount of controversy calculation).

28.     Because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the action is between citizens of different states, this District Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a). Thus, this case may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1441 and 1446.

## IV.    NOTICE AND TIMELINESS

29.     Finally, this Notice of Removal has been given to Plaintiff and has been promptly filed with the Clerk of the Circuit Court of the Ninth Judicial Circuit in and for Orange County. A copy of the Notice of Filing Notice of Removal (without exhibits) is attached hereto as **Exhibit "B."**

30.     The required filing fee and an executed civil cover sheet accompany this Notice.

WHEREFORE, Faneuil respectfully removes this action, pending in the Ninth Judicial Circuit Court of Orange, Florida, to the United States District Court in the Middle District Court of Florida, Orlando Division.

Dated: December 30, 2020.           Respectfully submitted,

                                    LITTLER MENDELSON, P.C.
                                    111 N. Orange Avenue, Suite 1750
                                    Orlando, Florida 32801-2366
                                    Telephone:   (407) 393-2900
                                    Facsimile:    (407) 393-2929

                        BY:    */s/ Rocio Blanco Garcia*
                                    Kimberly J. Doud
                                    Fla. Bar No.: 523771
                                    Email: kdoud@littler.com
                                    Rocio Blanco Garcia
                                    Fla. Bar No.: 99304
                                    Email: rblancogarcia@littler.com

                                    *COUNSEL FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of December 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and a correct copy of the foregoing has been furnished via electronic mail to:. Noah Storch, Esq., noah@floridaovertimelawyer.com, and David M. Nudel, Esq., david@floridaovertimelaw.com. 10368 W. SR 84, Suite 103, Davie, Florida 33324.

                                    *Rocio Blanco Garcia*
                                    Rocio Blanco Garcia, Esq.

4833-6864-1749.2 061652.1043                    12